UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TORRELL SAXON,

                        Petitioner,

              – v. –

UNITED STATES OF AMERICA,

                        Respondent.

**ORDER**

12 Cr. 320 (ER)

RAMOS, D.J.:

On June 9, 2020, Torrell Saxon filed a *pro se* motion for compassionate release in response to the COVID-19 pandemic.  Doc. 60.  On June 17, 2020, the Government opposed his motion arguing, *inter alia*, that he had not exhausted his administrative remedies with the Bureau of Prisons ("BOP").  Doc. 62.  Because Saxon had provided no proof of exhaustion of his claim, the Court denied his motion without prejudice on June 18, 2020.  Doc. 63.  On July 10, 2020, over a month after he submitted his first compassionate release motion, the Court received a submission from Saxon titled "Reply to Government's Response," which argued that he was unable to exhaust his administrative remedies.  Doc. 64.  On July 13, 2020, the Court agreed to waive the exhaustion requirement and considered the reply Saxon's renewed motion.[1]  Doc. 65. On July 17, 2020, the Government again opposed.  Doc. 66.  For the reasons set forth below, the Court denies Saxon's renewed motion for compassionate release.

I.      **Background**

On March 25, 2012, Saxon, now 42, was arrested in Middletown, New York for a home invasion robbery during which he shot at one of the inhabitants.  Doc. 55 at 1.  On December 21,

---

[1] On July 27, 2020, the Court received an additional submission from Saxon in which he makes substantially the same arguments for his early release.  Doc. 67.

2012, following a proffer at which he admitted to going to the home to sell oxycodone, Saxon

pleaded guilty to a two-count superseding information charging distribution and possession with

the intent to distribute oxycodone, alprazolam, and clonazepam.  *Id.* at 2-4.  On May 30, 2013,

the Court found that the Government had proven by a preponderance of the evidence at a *Fatico*

hearing that Saxon had been in possession of and discharged a firearm, and sentenced him to an

aggregate term of 120 months' incarceration.  Docs. 55 at 4-6.

Saxon is currently incarcerated at Federal Correctional Institution Hazelton ("FCI

Hazelton") and is set to be released on February 12, 2021.[2]  As of August 2, 2020, BOP reports

that FCI Hazelton has zero inmates and three staff members who tested positive for COVID-19,

two staff members who have recovered from COVID-19 infection, and no inmate or staff deaths

as a result of the virus.[3]

Saxon now seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by

the First Step Act.[4]  Docs. 60, 64, 67; *U.S. v. Ebbers*, 432 F. Supp. 3d 421, 422-23 (S.D.N.Y.

2020).  Across his submissions, Saxon argues that he is a smoker who has a "long history" of

breathing problems, keratoconus, hypertrophy of the nasal turbinates, bilateral nasal polyps,

hypertension, hyperthyroidism, and kidney disease, putting him at a high risk for complications

from contracting COVID-19.  Docs. 60 at 4; 64 at 3-4, 6; 64-1 at 5.  Saxon also challenges his

---

[2] *Find an Inmate*, BOP, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited August 4, 2020).

[3] *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Aug. 4, 2020).  The Government, and local reporting, however, indicate that at least one inmate had tested positive for coronavirus as of July 8, 2020.  Doc. 66 at 2; Josh Croup, *FCI Hazelton reports 2 cases of COVID-19*, WDTV, https://www.wdtv.com/2020/07/08/fci-hazelton-reports-2-cases-of-covid-19/ (July 8, 2020).  It seems the resolution of that case is not reflected in the BOP statistics, as there is no inmate recovery or death listed.

[4] Saxon also moves under the CARES Act but that statute "did not create any new rights or judicial remedies for prisoners under Section 3624(c)(2)[,]" the provision governing pre-release custody of prisoners.  *U.S. v. Woody*, --- F. Supp. 3d ---, 2020 WL 2989206, at *2 (S.D.N.Y. May 29, 2020); *U.S. v. Ogarro*, No. 18 Crim. 373-9 (RJS), 2020 WL 1876300, at *6 (S.D.N.Y. Apr. 14, 2020) (noting the Court lacks authority under the CARES Act to amend a prisoner's sentence).  Therefore, the Court denies Saxon's motion as to that claim.

sentence under the Equal Protection Clause of the Fourteenth Amendment, arguing that he is entitled to placement in a BOP residential reentry center ("RRC") because he is within six months of his release date.  Doc. 64 at 6-7.  He argues that staff "is denying New York State prisoners halfway hous[ing] because NYC is . . . a 'Hot Zone' and the halfway houses are closed."  Doc. 60 at 3.

## II.     Standard

### A.     Compassionate Release

A court may not "modify a term of imprisonment once it has been imposed except pursuant to statute."  *U.S. v. Roberts*, No. 18 Crim. 528-5 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (citation omitted).  Under § 3582(c)(1)(A)(i), a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" warranting a reduction.

The policy statement in U.S. Sentencing Guidelines § 1B1.13 guides the Court's discretion in applying this standard.  In relevant part, the Guidelines place three conditions on a determination of early release:

> (1) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the community . . . and
> (3) The reduction is consistent with this policy statement.

*Id*.  The Guidelines include as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.* cmt. 1(A)(ii)(I).

When determining whether a prisoner is a danger to the community, § 1B1.13 refers to 18 U.S.C. § 3142(g), which in turn lists the following factors to be considered:

> (1) the nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . . ; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Section 3553(a) provides that the Court should consider, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant."

### B.    Equal Protection

The Equal Protection Clause directs that "'all persons similarly situated should be treated alike.'"  *Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018) (*City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  For a prisoner to assert an Equal Protection claim, he "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" and that "the disparity in treatment . . . was not reasonably related to any legitimate penological interests."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted); *Lee v. Governor of the State of New York*, 87 F.3d 55, 60 (2d Cir. 1996) ("Because prisoners either in the aggregate or specified by offense are not a suspect class, the 1994 Act and Executive Order will be upheld if they are rationally related to a legitimate state interest.").

### III.    Discussion

#### A.    Compassionate Release

Saxon fails to put forth extraordinary and compelling reasons for a sentence reduction. Of the several medical conditions Saxon alleges, only chronic kidney disease would put him at increased risk from contracting COVID-19 according to the Centers for Disease Control and Prevention ("CDC").[5]   However, Saxon provides no documentary support that he has been diagnosed with chronic kidney disease.  Saxon affixes bloodwork results from July 31, 2019 showing that his Glomerular Filtration Rate[6] ("eGFR") was measured once at over 60.  Doc. 64-1 at 2.  The results themselves explain that a GFR *under* 60 "suggests a chronic kidney disease if found over a 3 month period."  *Id*.  His documentation evidences neither circumstance.

Of the other conditions Saxon alleges, smoking and hypertension are listed by the CDC as conditions that "might" put people at an increased risk from COVID-19 infection.  CDC Website.  While it appears from Saxon's submissions that he is a smoker, he provides scattershot evidence of hypertension.  Docs. 64 at 3; 67 at 7; 67-1 at 37.  Saxon attaches approximately 14 blood pressure readings spanning from 2013 to 2020, none of which reflect a diagnosis.  Docs. 60-1 at 16-40; 64-1 at 9-21; 67-1 at 13-38.  Indeed, the most recent record he provides, which is from February 9, 2020, shows that his blood pressure was 119/78, which is below the threshold for high blood pressure.[7]  Docs. 64-1 at 9; 66 at 2; 67-1 at 6.  Moreover, even if he does have

---

[5] *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (July 30, 2020) ("CDC Website").

[6] "GFR is Glomerular Filtration Rate and it is a key indicator of renal function. eGFR is estimated GFR and is a mathematically derived entity based on a patient's serum creatinine level, age, sex and race."  *About eGFR*, The Renal Assoc., https://renal.org/information-resources/the-uk-eckd-guide/about-egfr/ (last visited Aug. 4, 2020).  The Renal Association emphasizes that values around 60 should not be "over-interpreted" and the importance of repeat testing.  *Id.*

[7] *High Blood Pressure*, Am. Heart Assoc., https://www.heart.org/en/health-topics/high-blood-pressure (last visited Aug. 4, 2020).

hypertension, being a smoker and having high blood pressure are common conditions and do not rise to the level of extraordinary and compelling circumstances warranting release. *U.S. v. Mata*, No. 11 Crim. 435 (VM), 2020 WL 3619537, at *1 (S.D.N.Y. July 2, 2020) (denying compassionate release to 47 year old inmate with a history of hypertension and smoking, as well as other health concerns).

In addition, Saxon refers in his initial submission and renewed motion to a "long history" of breathing problems such as shortness of breath, wheezing, and chest pains. Docs. 60 at 4; 64 at 3. The documentation he provides shows that he has hypertrophy of the nasal turbinates and a history nasal polyps, both of which can obstruct breathing.[8] Doc. 60-1 at 20, 30. The exhibits also show that he may have sleep apnea. Doc. 60-1 at 40. However, none of these conditions are listed by the CDC as exacerbating COVID-19 infection. CDC Website. Nor are the remaining conditions Saxon cites—hyperthyroidism and keratoconus[9]—known comorbidities with COVID-19. CDC Website. In sum, none of the conditions he alleges make him particularly vulnerable from COVID-19 such that compassionate release is mandated. *Woody*, 2020 WL 2989206, at *3 (denying compassionate release where inmate "does not report any health issues that would make him particularly vulnerable to COVID-19.").

Moreover, even if Saxon had shown extraordinary and compelling reasons supporting his early release, any sentence reduction would be inconsistent with the factors enumerated in § 3553(a). While the Court has no reason to doubt Saxon's assertions that he has completed his programming and has served his sentence without incident, and commends him for these

---

[8] *Turbinate Hypertrophy*, UCI Health, http://www.ucihealth.org/medical-services/ear-nose-throat-ent/nose-sinus-disorders/turbinate-hypertrophy (last visited Aug. 4, 2020); Dr. Loretta Lanphier, *Nasal Polyps*, OAW Health, https://oawhealth.com/condition/nasal-polyps/ (last visited Aug. 4, 2020).

[9] Keratoconus is a condition of the eye that distorts vision. *Keratoconus*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/keratoconus/symptoms-causes/syc-20351352 (last visited Aug. 4, 2020).

achievements, they do not change the seriousness of the underlying offense in this case. Doc. 67 at 6. Saxon was arrested for a home invasion during which he shot at one of the inhabitants and then pleaded guilty to the distribution and possession of several controlled substances. Doc. 55 at 1, 3-4. *U.S. v. Gordon*, 126 F. App'x 12, 13-14 (2d Cir. 2005) (quoting *U.S. v. Reese*, 33 F.3d 166, 174 (2d Cir. 1994)) ("A sentencing court may rely on 'hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in acquittal.'"). These circumstances justify his 120-month sentence.

**B.      Equal Protection**

Saxon's Equal Protection claim is also unconvincing. As noted, his sentence is rational under the sentencing framework. *Wright v. Lindsay*, No. 09 Civ. 4226 (KAM) (LB), 2010 WL 625360, at *7 (E.D.N.Y. Feb. 18, 2010) (rejecting prisoner's Equal Protection claim in part because shorter RRC placement than desired was "reasonably related to legitimate penal interests"). Saxon also provides no evidence to suggest that BOP has not placed him in an RRC "because of purposeful discrimination against him." *Id.* (rejecting prisoner's Equal Protection claim also because decisionmakers lacked discriminatory motive). In fact, he notes that the reason he cannot yet obtain an RRC placement is because New York is a "'Hot Zone'" for COVID-19 exposure. Doc. 60 at 3. This is a rational, non-discriminatory reason not to place him in an RRC at this time, especially when it has been reported that "halfway houses are uniquely positioned to be vectors for the virus" because "[r]esidents arrive from prisons across the country, then share rooms, bathrooms, and dining areas."[10]

Accordingly, Saxon's request for compassionate release is denied on all grounds raised.

---

[10] Liliana Segura, *As Coronavirus Spreads in Federal Prisons, Cases in Halfway Houses are Being Undercounted*, The Intercept, https://theintercept.com/2020/05/28/coronavirus-federal-prison-halfway-houses/ (May 28, 2020); *see also* Joseph Neff, *Photos Show No Social Distancing in Federal Halfway House*, The Marshall Project, https://www.themarshallproject.org/2020/05/15/photos-show-no-social-distancing-in-federal-halfway-house (May 15, 2020).

**IV.**    **Conclusion**

For all of these reasons, Saxon's motion is denied.  The Clerk is respectfully directed to terminate the motion, Doc. 67.

Chambers will mail a copy of this Order to Torrell Saxon, #66770054, FCI Hazelton, P.O. Box 5000, Bruceton Mills, W.V. 26525.

It is SO ORDERED.

Dated:    August 5, 2020
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

8